1  A&G LAW, LLC
   Robert M. Andalman (admitted *pro hac vice*)
2  randalman@aandglaw.com
   Rachael Blackburn (admitted *pro hac vice*)
3  rblackburn@aandglaw.com
   542 South Dearborn Street, 10th Floor
4  Chicago, Illinois 60605
   Telephone:  312-348-7629
5  Facsimile:  312-279-4529

6  William A. Delgado (Bar No. 222666)
7  wdelgado@willenken.com
   WILLENKEN WILSON LOH & DELGADO
8  LLP
   707 Wilshire Blvd., Suite 3850
9  Los Angeles, California 90017
   Telephone:  213 955-9240
10 Facsimile:  213 955-9250

11
   Attorneys for Defendants
12 NBTY, INC. and NATURE'S BOUNTY, INC.

13                 UNITED STATES DISTRICT COURT

14             NORTHERN DISTRICT OF CALIFORNIA

15

16 | PAUL DAVID DACHAUER, on behalf of | CASE NO.: 3:16-CV-00216-VC |
17 | Himself and All Others Similarly Situated, | |
   | | |
18 | Plaintiff, | **DEFENDANTS' ANSWER AND** |
   | | **AFFIRMATIVE DEFENSES TO THE** |
19 | v. | **CORRECTED FIRST AMENDED** |
   | | **COMPLAINT** |
20 | NBTY, INC. and NATURE'S BOUNTY, | |
21 | INC., | Hon. Vince Chhabria |
   | | |
22 | Defendants. | |
23

24

25

26

27

28

1   Defendants NBTY, Inc. and Nature's Bounty, Inc. ("Defendants") answer the

2   allegations made by Paul David Dachauer in his Corrected First Amended Complaint as

3   follows:NATURE OF ACTION

4       1.      Defendants manufacture, market, sell and distribute what are known as mega-

5   dose[1] Vitamin E supplements under their brand name "Nature's Bounty"[2]. Defendants

6   uniformly represent on the front of every label of their products that their Vitamin E

7   supplements will promote immune, heart and circulatory health. They also make similar

8   representations on the back of their labeling.

9       **ANSWER:     Defendants admit that they manufacture, market, sell and distribute**

10  **Vitamin E supplements, including in dosages of Vitamin E exceeding 200 IU, under the**

11  **brand name "Nature's Bounty." Defendants admit that this includes the products listed in**

12  **footnote 2 of Paragraph 1. Defendants deny that the labels of their products represent**

13  **that Vitamin E supplements will promote immune, heart and circulatory health on either**

14  **the front or back of the labeling. Defendants further deny that a "mega-dose" of Vitamin**

15  **E is any dose in excess of 200 IU.**

16      2.      Thus, on the front of each and every bottle of their Vitamin E supplements,

17  Defendants represent that the Product "Promotes" (1) Immune Health (2) Heart Health and (3)

18  Circulatory Health. Defendants reinforce these representations on the back of each bottle of

19  Vitamin E, stating that the Product "promotes" immune function and "supports" cardiovascular

20  health. In truth, Defendants' Vitamin E products do not promote (1) immune health (2) heart

21  health or (3) circulatory health.

22      **ANSWER:     The labels of Defendants' Vitamin E products speak for themselves**

23

24  ---

[1] Mega-dose vitamin E supplements are ones that provide supplemental Vitamin E in amounts
25  of 200 IU or greater.

26  [2] Defendants' Vitamin E Products include: (1) Vitamin E 400 IU Pure d-Alpha; (2) Vitamin E
400 IU with dl-Alpha and Natural d-Alpha; (3) Vitamin E 400 IU; (4) Vitamin E 400 IU Pure
dl-Alpha; (5) Water Dispersible Vitamin E 400 IU with dl-Alpha; (6) Vitamin E 200 IU Pure
27  dl-Alpha; (7) Vitamin E 1000 IU Pure dl-Alpha; and (8) Vitamin E 1000 IU with dl-Alpha &
Natural d-Alpha (collectively "the Products" or "Vitamin E"). Plaintiff reserves the right to add
28  additional Products upon completion of discovery.

**DEFENDANTS' ANSWER AND AFFIRMATIVE
DEFENSES TO THE CORRECTED FIRST AMENDED
CLASS ACTION COMPLAINT**

1  **and Defendants deny the allegations of Paragraph 2 to the extent that those allegations**
2  **are incomplete or inconsistent with the labels. Defendants specifically deny that the three**
3  **representations identified in Paragraph 2 are made on the front of each and every bottle**
4  **of their Vitamin E supplements. Defendants deny the remaining allegations of Paragraph**
5  **2.**

6      3.      These representations have been proven to be false by an overwhelming weight
7  of scientific evidence derived from randomized placebo controlled clinical trials. These are not
8  just a few isolated clinical trial results. Vitamin E supplements are one of the, if not the, most
9  studied substances in humans.

10          **ANSWER:      Defendants deny the allegations of Paragraph 3.**

11      4.      Based upon this vast weight of evidence from randomized controlled clinical
12  trials, there is a consensus in the scientific community that the mega-dose Vitamin E
13  supplements Defendants sell do not promote immune health/overall health. For if they did
14  promote immune/overall health there would be less disease or sickness in consumers taking
15  these Vitamin E supplements which would, in turn, lower their rate of all-cause mortality.

16          **ANSWER:      Defendants deny the allegations of Paragraph 4.**

17      5.      But no such lowering of the all-cause mortality rate has been found and the
18  sample size is so large (over 200,000 study subjects) that there is a consensus that any further
19  study of whether these Vitamin E supplements would provide any such benefits would be
20  futile.

21          **ANSWER:      Defendants deny the allegations of Paragraph 5.**

22      6.      In fact, it has been determined that taking mega-dose Vitamin E supplements
23  potentially increases the all-cause mortality rate in those who take them.

24          **ANSWER:      Defendants deny the allegations of Paragraph 6.**

25      7.      As a result, there is a consensus among experts in the field that people should
26  not take mega-dose Vitamin E supplements, such as those sold by Defendants.

27          **ANSWER:      Defendants deny the allegations of Paragraph 7.**

28      8.      Thus, Defendants' Vitamin E supplements are, at best, worthless and, at worst,

1  potentially harmful.

2      **ANSWER:**    **Defendants deny the allegations of Paragraph 8.**

3      9.    It is clear that in marketing their mega-dose Vitamin E Products, Defendants are

4  playing upon consumers' interest and desire to improve their overall health including immune,

5  heart and circulatory health (collectively "health benefit representations").

6      **ANSWER:**    **Paragraph 9 contains argument rather than factual assertions and**

7  **so no answer is required. Defendants otherwise deny the allegations of Paragraph 9.**

8      10.    A basic tenet of marketing is that consumer purchases are materially influenced

9  by product benefit information displayed on the front of the label, such as the false health

10  benefit representations prominently displayed on the front of Defendants' Vitamin E product

11  labels.

12      **ANSWER:**    **Defendants deny the allegations of Paragraph 10.**

13      11.    Defendants are also playing upon the fact that the nutrient Vitamin E is an

14  essential nutrient.

15      **ANSWER:**    **Paragraph 11 contains argument rather than factual assertions and**

16  **so no answer is required. Defendants admit that the nutrient Vitamin E is an essential**

17  **nutrient, but otherwise deny the remaining allegations of Paragraph 11.**

18      12.    But, the nutrient Vitamin E is not and should not be confused with Defendants'

19  mega-dose Vitamin E *supplements*.

20      **ANSWER:**    **Defendants admit that Vitamin E is the active ingredient (and**

21  **generally the sole active ingredient) of its Vitamin E supplements. Defendants further**

22  **admit that there is a distinction between the nutrient Vitamin E, generally, and the**

23  **supplement product, specifically. Otherwise, Paragraph 12 contains argument rather**

24  **than factual assertions and so no answer is required. Defendants otherwise deny the**

25  **remaining allegations of Paragraph 12.**

26      13.    While the nutrient Vitamin E is known as an essential nutrient, this does not

27  mean that Defendants' mega-dose Vitamin E supplements provide any health benefits. They

28  are, in fact, superfluous at best and harmful at worst.

1  **ANSWER:  Defendants admit that the nutrient Vitamin E is known as an**

2  **essential nutrient. Otherwise, Paragraph 13 contains argument rather than factual**

3  **assertions and so no answer is required. Defendants otherwise deny the remaining**

4  **allegations of Paragraph 13.**

5  14.  The Recommended Daily Allowance ("RDA") of Vitamin E, the nutrient, was

6  set in 2000 by the Institutes of Medicine at 15 mg per day for teenagers over 14 and adults.

7  This RDA was an estimate based upon the best evidence available, but was by no means

8  deemed to be exact.

9  **ANSWER:  Defendants admit that the Recommended Dietary Allowance of**

10  **Vitamin E, the nutrient, was set in 2000 by the Institutes of Medicine at 15 mg per day for**

11  **teenagers over 14 and adults. Defendants admit that the RDA was determined to be the**

12  **intake level sufficient for 97-98% of healthy individuals. Defendants deny the remaining**

13  **allegations of Paragraph 14.**

14  15.  In fact, over the last 15 years it has been determined that dietary Vitamin E

15  intakes average at around 9.7 mg per day. Yet, even though there is an apparent "gap" of 5.3

16  mg between the average intake and the RDA, no negative health consequences have been

17  observed in the United States as a result of this 5.3 mg shortfall between the RDA and the

18  average daily intake.

19  **ANSWER:  Defendants deny the allegations of Paragraph 15.**

20  16.  Thus, Americans are getting sufficient amounts of Vitamin E from their diets.

21  **ANSWER:  Defendants deny the allegations of Paragraph 16.**

22  17.  Plaintiff is not contending that Defendants are making illegal disease claims

23  under the FDCA, such as expressly representing that Defendants' Vitamin E supplements

24  "prevent heart disease" or that Defendants' Vitamin E supplements "prevent diseases caused by

25  lowered immunity."

26  **ANSWER:  Paragraph 17 contains argument rather than factual assertions and**

27  **so no answer is required. Defendants do admit that Plaintiff's contention is not that**

28  **Defendants make any disease claims on their Vitamin E supplement labels, such as that**

1   **the supplements "prevent heart disease" or "prevent diseases caused by lowered**

2   **immunity." Defendants otherwise deny the remaining allegations of Paragraph 17.**

3        18.    Rather, Plaintiff contends that Defendants' structure function claims regarding

4   immune health, heart health and circulatory health are false.

5       **ANSWER:**    **Paragraph 18 contains argument rather than factual assertions and**

6   **so no answer is required. Defendants do admit that Plaintiff's contention is that the**

7   **structure/function claims on Defendants' Vitamin E labels are false, a contention that**

8   **Defendants deny.**

9        19.    The measures used by experts in the field to determine whether Defendants'

10   structure function claims are false are results from clinical studies that measure (1) whether

11   Vitamin E supplementation prevents cardiovascular disease or its related conditions, and (2)

12   whether Vitamin E supplementation has a positive effect on all-cause mortality. While these

13   are, at least in part, disease related endpoints, the fact is that experts in the field believe that if a

14   substance, such as Defendants' mega-dose Vitamin E supplements were to provide, for

15   example, a heart health structure function benefit, the effects of such a benefit would result in a

16   reduction of cardiovascular disease in those taking the supplements.

17       **ANSWER:**    **Paragraph 19 contains argument rather than factual assertions and**

18   **so no answer is required. Defendants otherwise deny the allegations of Paragraph 19.**

19        20.    In this regard, experts in the field recognize that the measure of whether a heart

20   is healthy is that it is free from cardiovascular disease, which is defined as coronary artery

21   disease, hypertensive heart disease, congestive heart failure, peripheral vascular disease and

22   atherosclerosis including cerebral artery disease and strokes, including diseases of the heart

23   muscle, blood vessels that supply the heart, heart failure and electrical conduction problems.

24   Thus, experts in the field view the test for whether a substance, such as Vitamin E supplements,

25   provide any heart benefits, including structure function benefits, is whether the substance has

26   an effect on cardiovascular events or helps prevent cardiovascular disease ("CVD").[3]

27

28   [3] For example, the American Heart Association defines cardiovascular health as the absence of

1  **ANSWER:    Paragraph 20 contains argument rather than factual assertions and**

2  **so no answer is required. Defendants otherwise deny the allegations of Paragraph 20.**

3  **With regard to the materials referenced in footnote 3, those materials speak for**

4  **themselves and Defendants deny Paragraph 20 to the extent the footnote is inconsistent**

5  **with the materials themselves. For example, the American Heart Association definition of**

6  **heart health is not limited to the absence of disease.**

7  21.    Large scale studies have been conducted to test the hypothesis of whether, when

8  taken over a long term, Vitamin E supplements result in less incidence of CVD. While the

9  endpoints of the studies were the prevention of CVD and its related conditions, if Vitamin E

10  supplements actually provided any clinically meaningful structure function benefits to the

11  heart, such as better circulation, or a stronger heart muscle through healthier cells etc. (e.g.,

12  benefits that would justify the purchasing and taking of a Vitamin E supplement), that would

13  have resulted in a reduced incidence of CVD among those studied. It did not.

14  **ANSWER:    Defendants admit that studies have been conducted to test the**

15  **hypothesis of whether, when taken over a long term, Vitamin E supplements result in less**

16  **incidence of CVD. The remainder of Paragraph 21 contains argument rather than factual**

17  **assertions and so no answer is required. Defendants otherwise deny the remaining**

18  **allegations of Paragraph 21.**

19  22.    If Vitamin E supplements did provide any heart health benefits, these RCTs

20  were large enough and long enough to have detected any such purported structure function

21  benefits in that there were would have been a lower incidence of CVD or its related conditions

22  in the groups taking vitamin E supplements.

23  **ANSWER:    Paragraph 22 contains argument rather than factual assertions and**

24

25

26  disease.http://www.heart.org/idc/groups/heartpublic/@wcm/@sop/@smd/document
s/downloadable/ucm_319831.pdf. Similarly, the Columbia University Medical web site

27  (http://www.cumc.columbia.edu/cbch/), the Mayo Clinic web site (http://www.mayoclinic.org/
cardiovascular-disease-rst/cardioheartclinic.html), and University of Chicago

28  (http://www.ucmc150.uchicago.edu/cardio/) web site all define cardiovascular health in terms
of the prevention of CVD.

**DEFENDANTS' ANSWER AND AFFIRMATIVE
DEFENSES TO THE CORRECTED FIRST AMENDED
CLASS ACTION COMPLAINT**

1   **so no answer is required. Defendants otherwise deny the allegations of Paragraph 22.**

2       23.     The results of these large scale RCTs, however, demonstrated that Vitamin E

3   supplements, like Defendants' Products, do not provide any cardiovascular or heart health

4   benefits – including any structure function benefits.

5       **ANSWER:**    **Defendants deny the allegations of Paragraph 23.**

6       24.     In this regard, the overwhelming consensus in the scientific community is that

7   Vitamin E supplementation provides no cardiovascular or heart health benefits. Thus, major

8   medical groups including the American Heart Association (AHA) and Mayo Clinic do not

9   recommend that they be taken for heart health.

10       **ANSWER:**    **Defendants deny the allegations of Paragraph 24.**

11       25.     The same is true for Defendants' structure function claim regarding immune

12   health. While Plaintiff is not alleging that Defendants' "supports immune health" representation

13   states or implies that their mega-dose Vitamin E supplements prevent disease, experts in the

14   field agree that if Defendants' mega-dose Vitamin E supplements did, in fact, affect the

15   structure function of persons' immune health, given the large sample size of persons in these

16   Vitamin E RCTs (over 200,000) those effects would have manifested in a decreased rate of all-

17   cause mortality. All-cause mortality is, in turn, a measure of which group had less illness,

18   sickness or disease.

19       **ANSWER:**    **Paragraph 25 contains argument rather than factual assertions and**

20   **so no answer is required. Defendants otherwise deny the allegations of Paragraph 25.**

21       26.     But, as more fully discussed below, the combined results of these largescale

22   long-term RCTs showed that not only did Vitamin E supplements not lower the rate of all-

23   cause mortality (and thus support immune health), persons taking megadose Vitamin E

24   supplements like those sold by Defendants actually had an increased rate of all-cause mortality.

25       **ANSWER:**    **Paragraph 26 contains argument rather than factual assertions and**

26   **so no answer is required. Defendants otherwise deny the allegations of Paragraph 26.**

27       27.     "All-cause mortality" is deemed to be a valid measure of whether Vitamin E

28   supplements, such as those sold by Defendants, provide any overall long term health benefits,

**DEFENDANTS' ANSWER AND AFFIRMATIVE
DEFENSES TO THE CORRECTED FIRST AMENDED
CLASS ACTION COMPLAINT**

1    including immune health, heart health and circulatory health. All-cause mortality measures the

2    rate of death in people who take a substance, in this case Vitamin E supplements, versus

3    placebo.

4         **ANSWER:    Paragraph 27 contains argument rather than factual assertions and**

5    **so no answer is required. Defendants otherwise deny the remaining allegations of**

6    **Paragraph 27.**

7         28.     In the last decade, and in particular the last few years, several high-quality large

8    scale meta-analyses have been conducted, combining the results of numerous RCTs and using

9    them to derive ever more statistically powered observations about the effects of Vitamin E

10   supplements on all-cause mortality. Every one of these meta-analyses has decisively concluded

11   that Vitamin E supplements do not and will not ever lower the rate of all-cause mortality. And,

12   in turn, they have shown that Defendants' mega-dose Vitamin E supplements do not support

13   immune health.

14        **ANSWER:    Paragraph 28 contains argument rather than factual assertions and**

15   **so no answer is required. Defendants otherwise deny the remaining allegations of**

16   **Paragraph 28. Answering further, the specific analyses referenced in Paragraph 28 are**

17   **not identified and so Defendants lack sufficient information to admit or deny their**

18   **characterization.**

19        29.     Moreover, several of these well-conducted and highly regarded meta-analyses

20   have concluded that Vitamin E supplementation actually poses a risk of harm because it was

21   found that the all-cause mortality rate for people taking more than 15 mg of Vitamin E

22   supplements was higher than those who took placebo. In other words, if one takes any of

23   Defendants' mega-dose Vitamin E supplements they encounter a greater risk of dying than if

24   they took nothing. Hardly a product worth buying to "support" one's health.

25        **ANSWER:  Paragraph 29 contains argument rather than factual assertions and**

26   **so no answer is required. Defendants otherwise deny the remaining allegations of**

27   **Paragraph 29. Answering further, the specific analyses referenced in Paragraph 29 are**

28

1  **not identified and so Defendants lack sufficient information to admit or deny their**

2  **characterization.**

3      30.    A stronger measure of whether Vitamin E supplements do not provide immune

4  health benefits is hard to find. Experts in the field agree that studies finding Vitamin E

5  supplements have no positive effect on all-cause mortality is evidence that they do not provide

6  any immune health benefits. And the fact that they may induce a higher rate of all-cause

7  mortality means that Defendants' mega-dose Vitamin E supplements pose a risk of harm.

8      **ANSWER:    Paragraph 30 contains argument rather than factual assertions and**

9  **so no answer is required. Defendants otherwise deny the allegations of Paragraph 30.**

10 **Answering further, the specific analyses referenced in Paragraph 30 are not identified**

11 **and so Defendants lack sufficient information to admit or deny their characterization.**

12     31.    Because immune function necessarily involves preventing disease, the failure to

13 have any effect on lowering all-cause mortality and, in fact, being deemed to actually increase

14 the rate of all-cause mortality, means Defendants' mega-dose Vitamin E supplements provide

15 no structure function benefit to immune health.

16     **ANSWER:    Paragraph 31 contains argument rather than factual assertions and**

17 **so no answer is required. Defendants otherwise deny the allegations of Paragraph 31.**

18     32.    The author of the largest and most comprehensive meta-analyses to date found

19 that taking Vitamin E supplements in amounts greater than 15mg increases the rate of all-cause

20 mortality. See, e.g., Bjelakovic G, Nikolova D, Gluud C., Meta-Regression Analyses, Meta-

21 Analyses, and Trial Sequential Analyses of the Effects of Supplementation, with Beta-

22 Carotene, Vitamin A, and Vitamin E Singly or in Different Combinations on All-Cause

23 Mortality: Do We Have Evidence for Lack of Harm? PLOS ONE September 2013: Vol. 8,

24 Issue 9, e74558. In fact, this meta-analysis did what is called a "futility analysis." A futility

25 analysis is a statistical analysis of whether or not any future study of Vitamin E supplements

26 and all-cause mortality should be conducted. The authors concluded that, based upon the

27 sample size already existent, well-established statistical principles require the conclusion that

28 any future studies will never result in a finding that Vitamin E supplements decrease all-cause

**DEFENDANTS' ANSWER AND AFFIRMATIVE**
**DEFENSES TO THE CORRECTED FIRST AMENDED**
**CLASS ACTION COMPLAINT**

1   mortality.

2       **ANSWER:    Paragraph 32 contains argument rather than factual assertions and**

3   **so no answer is required. Concerning its characterization of the referenced study, that**

4   **study speaks for itself and Defendants deny the allegations of Paragraph 32 to the extent**

5   **that they are incomplete or inconsistent with the terms of the study. Defendants otherwise**

6   **deny the allegations of Paragraph 32.**

7       33.    This conclusion is perhaps best illustrated by the futility graph presented with

8   this meta-analysis, see Figure 7 of Bjelakovic:

9       [Unable to duplicate chart from the amended complaint]

10      **ANSWER:    Paragraph 33 contains argument rather than factual assertions and**

11  **so no answer is required. Figure 7 speaks for itself and Defendants deny the allegations of**

12  **Paragraph 33 to the extent that they are incomplete or inconsistent with the terms of**

13  **Figure 7. Defendants otherwise deny the allegations of Paragraph 33.**

14      34.    In figure 7 above, the green line above the X axis represents the point at which

15  Vitamin E supplements would be shown to have a positive/lowering effect on the rate of all-

16  cause mortality. The green line below the X axis represents the point at which Vitamin E

17  supplements would be shown to have a negative/increasing effect on the rate of all-cause

18  mortality.

19      **ANSWER:    Figure 7 speaks for itself and Defendants deny the allegations of**

20  **Paragraph 34 to the extent that they are incomplete or inconsistent with the terms of**

21  **Figure 7. Paragraph 34 further contains argument rather than factual assertions and so**

22  **no answer is required. Defendants otherwise deny the allegations of Paragraph 34.**

23      35.    The blue line represents the combined results of the RCTs conducted on Vitamin

24  E supplements and all-cause mortality. As can be seen, in the very beginning, the initial results

25  of the few early RCTs projected a positive effect on all- cause mortality, but as time went on

26  and more RCTs were performed it can be seen that the blue line continues to dip until it dips

27  below the green line underneath the X axis – or that the combined results of the RCTs showed

28  that Vitamin E supplementation increases the rate of all-cause mortality.

**DEFENDANTS' ANSWER AND AFFIRMATIVE**
**DEFENSES TO THE CORRECTED FIRST AMENDED**
**CLASS ACTION COMPLAINT**

1    **ANSWER:     Figure 7 speaks for itself and Defendants deny the allegations of**
2    **Paragraph 35 to the extent that they are incomplete or inconsistent with the terms of**
3    **Figure 7. Paragraph 35 further contains argument rather than factual assertions and so**
4    **no answer is required. Defendants otherwise deny the allegations of Paragraph 35.**

5         36.    This blue line dips lower, rises slightly and then plateaus just below the green
6    line underneath the X axis, meaning that it is and will continue below this harm line.

7    **ANSWER:     Figure 7 speaks for itself and Defendants deny the allegations of**
8    **Paragraph 36 to the extent that they are incomplete or inconsistent with the terms of**
9    **Figure 7. Paragraph 36 further contains argument rather than factual assertions and so**
10   **no answer is required. Defendants otherwise deny the allegations of Paragraph 36.**

11        37.    As important, if not more, are the red lines on the figure that appear above both
12   green lines. These are the "futility" lines – once the blue line crosses one of these lines it is, per
13   well-established statistical analyses, deemed that any future testing will be futile in terms of
14   combined future studies finding a different result. Or, in the case of this figure, once the blue
15   line crossed the red line that is beneath the X axis, and because of the large sample size, it is
16   statistically futile to try to prove that Vitamin E supplements will ever have a positive effect on
17   all-cause mortality and in turn a positive effect on immune health.

18   **ANSWER:     Figure 7 speaks for itself and Defendants deny the allegations of**
19   **Paragraph 37 to the extent that they are incomplete or inconsistent with the terms of**
20   **Figure 7. Paragraph 37 further contains argument rather than factual assertions and so**
21   **no answer is required. Defendants otherwise deny the allegations of Paragraph 37.**

22        38.    Based upon these results, Bjelakovic et al. concluded, "When combined with
23   dietary intake, the total intake of vitamin A and vitamin E antioxidant supplement users in the
24   United States exceeds 100% of the estimated average requirement, with the intake of vitamin E
25   exceeding 700% of the estimated average requirement …. The current evidence on the effects
26   of these antioxidants on all-cause mortality, disease occurrence, and quality of life does not
27   support the use of these antioxidant supplements in a generally nourished population."

28   **ANSWER:     The cited study speaks for itself and Defendants deny the allegations**

1  **of Paragraph 38 to the extent that they are incomplete or inconsistent with the terms of**

2  **the study. Defendants otherwise deny the allegations of Paragraph 38.**

3       39.     Even less inclusive meta-analyses such as Curtis AJ, Bullen M., Piccenna L.,

4  McNeil JJ., Vitamin E supplementation and mortality in healthy people: A meta-analysis of

5  randomized controlled trials. Cardiovasc Drugs Ther 2014; 28:563-73, which limited

6  themselves to RCTs that only involved healthy people, while finding that the blue line was

7  slightly above the harm line (the green line below the X axis) also found that future study was

8  futile and that Vitamin E supplements would never be found to lower the rate of all-cause

9  mortality/affect immune health. Thus, Curtis et al. concluded, "Our result adds to the evidence

10 that supplemental vitamin E has no discernible clinical impact amongst individuals who are not

11 nutrient deficient[4] … There is no evidence of an effect (either positive or negative) of vitamin E

12 supplementation on all-cause mortality in apparently healthy people as determined by pooled

13 analysis of 18 randomized trials including a total of 71,116 and 71,103 people randomized to

14 vitamin E and control groups, respectively. The results provide no support for recommending

15 vitamin e supplementation to healthy adults."

16       **ANSWER:     The cited materials speak for themselves and Defendants deny the**

17 **allegations of Paragraph 39 to the extent that they are incomplete or inconsistent with the**

18 **materials. Paragraph 39 further contains argument rather than factual assertions and so**

19 **no answer is required. Defendants otherwise deny the allegations of Paragraph 39.**

20       40.     Similarly, the U.S. Preventative Services Task Force, a group of experts in the

21 field[5] who reviewed the scientific evidence regarding Vitamin E supplements, concluded "with

22

23 [4] Nutrient deficient persons are persons with certain rare diseases such as Friedriech's Ataxia or
   cystic fibrosis. These two conditions are listed as "rare diseases" by the Office of Rare Diseases
24 of the National Institutes of Health http://www.rightdiagnosis.com/c/cf/ prevalence. htm#
   prevalence_intro and http://www.rightdiagnosis.com/f/friedreichs_ ataxia/ prevalence.htm#
25 about_prevalence and_incidence. This means that less than 200,000 people are affected by each
   in the United States or 0.00%, respectively. In fact, Friedriech's Ataxia incidence in the general
26 population is 1 in 50,000 (https://en.wikipedia.org/wiki/Friedreich's_Ataxia) which is
   approximately 6,430 persons or 0.00002 of the United States population of 321,000,000
27 (http://worldpopulationreview.com/countries/united-statespopulation/).

28 [5] Created by Congress in 1984, "the U.S. Preventive Services Task Force (USPSTF or Task

1  moderate certainty that *the net benefit of vitamin E supplementation is zero*," including zero

2  oxidative stress, zero inflammation, zero CVD, zero cancer and zero all-cause mortality

3  benefits. *Id.* at 562 (emphasis added).

4      **ANSWER:    The cited study speaks for itself and Defendants deny the allegations**

5  **of Paragraph 40 to the extent that they are incomplete or inconsistent with the terms of**

6  **the study. Paragraph 40 further contains argument rather than factual assertions and so**

7  **no answer is required. Defendants otherwise deny the allegations of Paragraph 40.**

8      41.    Defendants also represent that their mega-dose Vitamin E supplements support

9  healthy skin. Plaintiff does not assert that this representation is false because there are no

10  competent and reliable RCTs that have ever addressed this question. Nevertheless, it is

11  Plaintiff's contention that the vast majority, if not all, of the purchasers of Defendants' mega-

12  dose Vitamin E supplements buy them based upon the health benefit representations and few, if

13  any, solely buy them to promote healthy skin. To the extent that there is any measurable

14  percentage of consumers who buy Defendants' products solely for skin health, this percentage

15  can be determined based upon consumer survey evidence and any such percentage can be

16  deducted from the aggregate damage amount calculated based upon the sales of Defendants'

17  Products.

18      **ANSWER:    Defendants admit that Vitamin E has a salutatory effect on skin**

19  **health, that certain of Defendants' Vitamin E product labels state this structure/function**

20  **of Vitamin E, that consumers purchase Vitamin E supplements with this**

21  **structure/function of Vitamin E in mind and that the complaint includes no allegation**

22  **that any of these facts are not so. Paragraph 41 further contains argument rather than**

23  **factual assertions and so no answer is required. Defendants otherwise deny the remaining**

24  **allegations of Paragraph 41.**

25

26  Force) is an independent group of national experts in prevention and evidence-based medicine
    that works to improve the health of all Americans by making evidence-based recommendations

27  about clinical preventive services such as screenings, counseling services, or preventive
    medications." http://www.ahrq.gov/professionals/clinicians-providers/

28  guidelinesrecommendations/ uspstf/index.html.

    **DEFENDANTS' ANSWER AND AFFIRMATIVE
DEFENSES TO THE CORRECTED FIRST AMENDED
CLASS ACTION COMPLAINT**

42.     As a result of Defendants' deceptive health benefit representations, consumers – including Plaintiff and members of the proposed Class – have purchased Products that do not perform as advertised.

**ANSWER:     Defendants deny the allegations of Paragraph 42.**

43.     Consumers' damages are easily calculated – damages are the purchase price they paid because the mega-dose supplements they purchased are worthless and potentially harmful. Information regarding the retail prices paid by consumers for Defendants' products, if not available from Defendant, can be readily obtained from third party organizations that obtain and compute this information, such as Nielsen or IRI.

**ANSWER:     Paragraph 43 contains argument rather than factual assertions and so no answer is required. Defendants otherwise deny the allegations of Paragraph 43.**

44.     Plaintiff brings this action on behalf of himself and other similarly situated consumers who purchased the Vitamin E Products, to halt the dissemination of this false, misleading and deceptive advertising message, correct the false and misleading perception it has created in the minds of consumers, and obtain redress for those who have purchased the Products. Based on violations of California state unfair competition laws and other similar state consumer fraud laws, Plaintiff seeks injunctive and monetary relief for consumers who purchased the Vitamin E Products.

**ANSWER:     Defendants admit that Plaintiff purports to bring this action based on state-law statutory claims on behalf of himself and other similarly situated consumers who purchased the Vitamin E Products. Defendants otherwise deny the allegations of Paragraph 44.**

**JURISDICTION AND VENUE**

45.     This Court has original jurisdiction pursuant to 28 U.S.C. §1332(d)(2). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which there are in excess of 100 class members and some members of the Class are citizens of a state different from Defendants.

**ANSWER:     Defendants do not contest subject matter jurisdiction. Defendants**

1   **admit that Plaintiff puts forward a putative class action in which Plaintiff claims the value**

2   **of the matter in controversy exceeds $5,000,000 and that there are in excess of 100 class**

3   **members, at least some of which are citizens of a state different from Defendants.**

4       46.     This Court has personal jurisdiction over Defendants because Defendants are

5   authorized to conduct and do conduct business in California. Defendants have marketed,

6   promoted, distributed, and sold the Products in California and Defendants have sufficient

7   minimum contacts with this State and/or sufficiently availed themselves of the markets in this

8   State through their promotion, sales, distribution and marketing within this State to render the

9   exercise of jurisdiction by this Court permissible.

10      **ANSWER:     Defendants do not contest that this Court has personal jurisdiction**

11  **over Defendants. Defendants admit that they and/or their affiliated companies have sold**

12  **the Vitamin E products to retailers who, in turn, sold the products to consumers in**

13  **California.**

14      47.     Venue is proper in this Court pursuant to 28 U.S.C. §§1391(a) and (b) because a

15  substantial part of the events giving rise to Plaintiff's claims occurred while he resided in this

16  judicial district. Venue is also proper under 18 U.S.C. §1965(a) because Defendants transact

17  substantial business in this District.

18      **ANSWER:     Defendants admit they transact business in this District. Defendants**

19  **are without knowledge or information sufficient to form a belief as to the truth of the**

20  **remaining allegations of regarding Plaintiff in Paragraph 47 and therefore denies them.**

21                          **PARTIES**

22      48.     Plaintiff David Paul Dachauer resides in San Anselmo, California and is a

23  resident and citizen of California. In or around June 17, 2015, Plaintiff Dachauer was exposed

24  to and relied upon Defendants' health benefit representations after reading the label of the

25  Vitamin E 1000 IU product. Plaintiff Dachauer purchased Vitamin E 1000 IU at a Rite-Aid in

26  San Rafael, California in reliance on Defendants' health benefit representations. The Vitamin E

27  1000 IU Plaintiff Dachauer purchased did not and could not provide the represented health

28  benefits because, as discussed herein, the vast weight of scientific evidence and the consensus

1  in the scientific community is that Vitamin E supplements have been conclusively proven to

2  not provide any of these health benefits. As a result, Plaintiff Dachauer suffered injury in fact

3  and lost money. Had Plaintiff Dachauer known the truth about Defendants' misrepresentations,

4  he would not have purchased Vitamin E 1000 IU.

5  **ANSWER:   Defendants deny that their Vitamin E supplements have been**

6  **proven not to have any health benefits or that the mere purchase of the supplements**

7  **causes any consumer, including Plaintiff, any injury or damages. Defendants are without**

8  **knowledge or information sufficient to form a belief as to the truth of the remaining**

9  **allegations regarding Plaintiff in Paragraph 48 and therefore denies them.**

10  49.   Defendant NBTY, Inc. ("NBTY") is a corporation organized and existing under

11  the laws of the state of Delaware. NBTY's headquarters is at 2100 Smithtown Ave.,

12  Ronkonkoma, New York 11779. NBTY manufactures, advertises, markets, distributes, and/or

13  sells the Vitamin E Products to tens of thousands of consumers in California and throughout the

14  United States.

15  **ANSWER:   Defendants admit NBTY is a Delaware corporation with its**

16  **principal place of business at 2100 Smithtown Avenue, Ronkonkoma, New York.**

17  **Defendants further admit that NBTY, directly or through affiliated companies,**

18  **manufactures, markets, distributes and sells Vitamin E supplements to retailers, who in**

19  **turn sell those products to consumers. Defendants deny that NBTY advertises the**

20  **Vitamin E Products.**

21  50.   Defendant Nature's Bounty, Inc. ("Nature's Bounty") is a corporation organized

22  and existing under the laws of the state of Delaware. Nature's Bounty is a subsidiary of NBTY.

23  Nature's Bounty is headquartered at 110 Orville Drive, Bohemia, New York 11716. Nature's

24  Bounty manufactures, advertises, markets, distributes, and/or sells the Vitamin E Products to

25  tens of thousands of consumers in California and throughout the United States.

26  **ANSWER:   Defendants admit that Nature's Bounty, Inc. is a Delaware**

27  **corporation, but deny that it is headquartered at 110 Orville Drive, Bohemia, New York**

28  **11716. Defendants further admit that companies affiliated with Nature's Bounty, directly**

1    **or through affiliated companies, manufacture, market, distribute and sell Vitamin E**

2    **products to retailers, who in turn sell those products to consumers. Defendants deny that**

3    **Nature's Bounty advertises the Vitamin E Products.**

4          51.      Plaintiff is informed and believes, and thus alleges, that at all times herein

5    mentioned, each of the Defendants was the agent, employee, representative, partner, joint

6    venturer, and/or alter ego of the other Defendant and, in doing the things alleged herein, was

7    acting within the course and scope of such agency, employment, representation, on behalf of

8    such partnership or joint venture, and/or as such alter ego, with the authority, permission,

9    consent, and/or ratification of the other Defendant.

10         **ANSWER:    Defendants deny the allegations of Paragraph 51.**

11                          **FACTUAL ALLEGATIONS**

12         52.      Defendants manufacture, distribute, market and sell nationwide Vitamin E

13   dietary supplements under their brand name "Nature's Bounty." They are: (1) Vitamin E 400

14   IU Pure d-Alpha; (2) Vitamin E 400 IU with dl-Alpha and Natural d-Alpha; (3) Vitamin E 400

15   IU; (4) Vitamin E 400 IU Pure dl-Alpha; (5) Water Dispersible Vitamin E 400 IU with dl-

16   Alpha; (6) Vitamin E 200 IU Pure dl-Alpha; (7) Vitamin E 1000 IU Pure dl-Alpha; and (8)

17   Vitamin E 1000 IU with dl-Alpha & Natural d-Alpha.[6]

18         **ANSWER:    Defendants admit that they manufacture, distribute, market and sell**

19   **nationwide the products identified in Paragraph 52.**

20         53.      Defendants' Vitamin E Products are sold in virtually every major food, drug,

21   and mass retail outlet in the country. The Vitamin E Products are available in 50, 60, 100, and

22   120 count bottles retailing for between $10.00 and $17.00.

23         **ANSWER:    Defendants admit their Vitamin E supplements are sold in retail**

24   **outlets throughout the United States in the count bottles stated in Paragraph 53.**

25   **Defendants are without knowledge or information sufficient to form a belief as to the**

26   **truth of the remaining allegations in this paragraph and therefore deny them.**

27

28   _____

[6] Plaintiff reserves the right to supplement this Product list upon completion of discovery.

**DEFENDANTS' ANSWER AND AFFIRMATIVE**
                                                                     **DEFENSES TO THE CORRECTED FIRST AMENDED**
                                                                     **CLASS ACTION COMPLAINT**

54.     Throughout the relevant time period, Defendants have consistently conveyed the message to consumers throughout the United States that their Vitamin E supplements provide health benefits simply by taking the recommended daily dosage. They do not. Defendants' health benefits representations are false, misleading and deceptive.

**ANSWER:     Paragraph 54 contains argument rather than factual assertions and so no answer is required. Defendants otherwise deny the allegations of Paragraph 54.**

55.     Defendants represent that the claimed health benefits are achieved from the Products' only purported active ingredient - Vitamin E. Vitamin E is a fat-soluble nutrient found in a variety of foods including, nuts, seeds, and green leafy vegetables. In the 1980s and 1990s, because Vitamin E was found to slow down the oxidation of LDL cholesterol in a test tube setting (i.e. in vitro testing) it, along with certain other vitamins such as C and D, was coined an antioxidant. That Vitamin E carries an "antioxidant" label does not, however, mean that it provides any health benefits. In fact, there is little known about how Vitamin E and other purported antioxidants actually work in the human body. For example, the IOM stated in 2000, "A metabolic function has not yet been identified. Vitamin E's major function appears to be as a non-specific chain-breaking antioxidant." http://iom.nationalacademies.org/~/media/Files/Activity%20Files/Nutrition/DRIs/DRI_Vitamins.pdf. This lack of knowledge about how Vitamin E, the nutrient, actually works remains today.

**ANSWER:     Defendants deny that they make any health claim concerning the Vitamin E supplement product, but rather state on the label that the product is not intended to diagnose, treat, cure or prevent any disease. Defendants admit that Vitamin E is a fat-soluble nutrient found in a variety of foods including, nuts, seeds, and green leafy vegetables. Defendants also admit that Vitamin E is an antioxidant. Defendants further state that the cited document speaks for itself and Defendants deny the allegations of Paragraph 55 to the extent that they are incomplete or inconsistent with the terms of that document. To the extent Paragraph 55 contains argument rather than factual assertions, no answer is required. Defendants are without knowledge or information sufficient to**

1  **form a belief as to the truth of the remaining allegations in this paragraph and therefore**
2  **deny them.**

3    56.    "Basic science" studies (e.g. in vitro, in vivo, and animal studies) conducted
4  decades ago led to hypotheses, yet to be proven in humans, that Vitamin E's purported
5  antioxidant properties might provide a whole host of health benefits. It is recognized by experts
6  in the field, however, that such "basic science" studies only create hypotheses that need to be
7  tested and do not constitute scientific proof that a substance works in humans.

8    **ANSWER:    Defendants admit that basic science studies, including in vitro, in**
9  **vivo and animal studies support the conclusion that Vitamin E is an essential nutrient and**
10  **an antioxidant that has a salutary structure/function on various systems in the body,**
11  **including the circulatory system. Defendants otherwise deny the allegations of Paragraph**
12  **56.**

13    57.    The popularity of Vitamin E and sales of the supplement got an additional boost
14  when, in the early 1990s, "observational studies" reported a perceived relationship between the
15  intake of Vitamin E and the prevention of cardiovascular disease. As a result of those studies –
16  and the commonly held perception at the time that Vitamin E supplements were safe – there
17  was a rapid increase in use of Vitamin E supplements.

18    **ANSWER:    Defendants admit that studies have shown Vitamin E has a salutary**
19  **benefit on health, including cardiovascular health. Otherwise, Defendants are without**
20  **knowledge or information sufficient to form a belief as to the truth of the remaining**
21  **allegations of Paragraph 57 and therefore deny them.**

22    58.    However, like basic science studies, observational studies (also known as
23  "epidemiological or population studies") are not considered by experts in the field to constitute
24  adequate proof of cause and effect in human beings. Among other things, observational studies
25  cannot control for confounding factors such as whether the subjects taking Vitamin E were
26  leading healthier lifestyles. As a result, as with basic science studies, observational studies are
27  deemed by experts in the field to provide hypotheses about potential effects which then must be
28  tested through RCTs.

**DEFENDANTS' ANSWER AND AFFIRMATIVE**
                                **DEFENSES TO THE CORRECTED FIRST AMENDED**
                                **CLASS ACTION COMPLAINT**

1   **ANSWER:     Paragraph 58 contains argument rather than factual assertions and**
2   **so no answer is required. Defendants otherwise deny the allegations of Paragraph 58.**

3       59.     The accepted form of scientific evidence recognized by experts in the field for
4   determining any heart or other human health benefit provided by a substance such as Vitamin E
5   is through RCTs.

6   **ANSWER:     Paragraph 59 contains argument rather than factual assertions and**
7   **so no answer is required. Defendants otherwise deny the allegations of Paragraph 59.**

8       60.     Since the mid–1990s, Vitamin E has been the subject of numerous, large
9   scale/long-term–RCTs, making it one of the most tested substances ever. To date, there have
10  been more than 25 large long–term RCTs or meta–analyses published, involving collectively
11  over 200,000 subjects.

12  **ANSWER:     Defendants admit that Vitamin E supplementation and its impact on**
13  **disease endpoints such as heart attacks and stroke have been the subject of a number of**
14  **large scale/long-term studies and meta-analyses. Defendants are otherwise without**
15  **knowledge or information sufficient to form a belief as to the truth of the allegations in**
16  **Paragraph 60 and therefore deny them.**

17      61.     That Vitamin E supplements may provide any of the health benefits represented
18  by Defendants has been discredited fully by this scientific research. The large randomized
19  clinical trials consistently show that Vitamin E supplementation provides no heart health
20  benefits, as Vitamin E supplements were no better than placebo in affecting the markers for
21  heart health, such as reducing the risk for cardiovascular disease and its associated outcomes
22  including heart attacks, stroke, or mortality. In other words, the numerous large scale RCTs that
23  make Vitamin E supplements one of the most studied substances ever have established that
24  Vitamin E supplements do not "Promote[] Heart Health."

25  **ANSWER:     The specific analyses referenced in Paragraph 61 are not identified**
26  **and so Defendants lack knowledge or information to form a belief as to the truth of the**
27  **allegations in Paragraph 61 and therefore deny them. Defendants otherwise deny the**
28  **allegations of Paragraph 61.**

1       62.     Representative examples of studies concluding that Vitamin E supplementation

2   does not provide heart health benefits include: Sesso, H.D., et al., *Vitamins E and C in the*

3   *Prevention of Cardiovascular Disease in Men, The Physicians' Health Study II Randomized*

4   *Controlled Trial*, 300(18) JAMA 2123–33 (Nov. 2008) (concluding that long term Vitamin E

5   supplementation does not prevent cardiovascular events in healthy middle–aged and older men

6   and concluding with the recommendation that persons not take Vitamin E supplements); Lee,

7   I–Min, et al., *Vitamin E in the Primary Prevention of Cardiovascular Disease and Cancer. The*

8   *Women's Health Study: A Randomized Controlled Trial*, 294(1) JAMA 56–65 (July 2005)

9   (concluding that Vitamin E supplementation provided no heart health benefits in healthy

10  women and recommending that women not take Vitamin E supplements); Lonn, E., et al.,

11  *Effects of Long–Term Vitamin E Supplementation On Cardiovascular Events And Cancer: A*

12  *Randomized Controlled Trial*, 293(11) JAMA 1338–47 (Mar. 2005) (concluding that long-term

13  Vitamin E supplementation does not prevent cardiovascular events, and in fact, may increase

14  the risk for heart failure and recommending not taking Vitamin E supplements); Arnold, J., et

15  al., Prevention of Heart Failure in Patients in the Heart Outcomes *Prevention Evaluation*

16  *(HOPE) Study*, 107 Circulation J. 1284–290 (Feb. 2003) (concluding that participants taking

17  400 IU/day of Vitamin E experienced no fewer cardiovascular events or hospitalizations for

18  heart failure or chest pain than participants taking a placebo); Chae C., Albert C., Moorthy,

19  MV, Lee I., Buring, J., *Vitamin E Supplementation and the Risk of Heart Failure in Women*,

20  Circulation: Heart Failure, 5:176 Journal of the American Heart Association 182 (2012)

21  (concluding that "at the present time, the cumulative evidence to date does not support the use

22  of Vitamin E supplementation to reduce the risk of cardiovascular diseases").[7] These large

23  scale and long term RCTs conclusively demonstrate that Vitamin E supplementation provides

24  no heart health benefits. That the results of these large scale/long term studies showed that

25

---

26  [7] Consistent with the forgoing allegations regarding the hypotheses presented by basic science
    and observational studies, each of these studies, in prefatory statements, noted the results of the
27  basic science or observational studies as background for why they were conducting their
    particular RCT. Ultimately, the RCTs did not support the results of the basic science or
28  observational studies.

1  Vitamin E supplements were no better than placebo demonstrate Defendants' heart health

2  representations are false, misleading or deceptive.

3      **ANSWER:    The studies cited in Paragraph 62 speak for themselves and**

4  **Defendants deny the allegations of Paragraph 62 to the extent that they are incomplete or**

5  **inconsistent with the terms of the studies. Defendants specifically deny that the cited**

6  **studies considered or reached any conclusions about heart health benefits of Vitamin E**

7  **supplements, whereas those studies in fact focused specifically on the impact of**

8  **supplementation on disease endpoints.**

9      63.    Numerous meta-analyses – which employ accepted statistical analyses to

10  combine the results of multiple RCTs – have likewise concluded that Vitamin E supplements

11  do not provide any all-cause mortality benefits. Additionally, those meta-analyses indicate that

12  people who take a dosage of more than 15mgs of Vitamin E supplements are actually *more*

13  *likely to die* than those taking a placebo. *See* Miller ER 3rd, Pastor–Barriuso R, Dalal D et al.,

14  *Metaanalysis: High–Dosage Vitamin E Supplementation May increase all–cause mortality*,

15  Ann Intern Med 2005; 142(1):37–46; Bjelakovic G, Nikolova D, Gluud LL, Simonetti RG,

16  Gluud C., *Mortality in randomized trials of antioxidant for primary and secondary prevention*:

17  systematic review and meta–analysis, JAMA Feb 28 2007; 297(8):842–857; Bjelakovic G,

18  Nikolova D, Gluud C., *Meta-Regression Analyses, Meta-Analyses, and Trial Sequential*

19  *Analyses of the Effects of Supplementation, with Beta-Carotene, Vitamin A, and Vitamin E*

20  *Singly or in Different Combinations on All-Cause Mortality: Do We Have Evidence for Lack of*

21  *Harm?* PLOS ONE September 2013: Vol. 8, Issue 9, e74558. Curtis AJ, Bullen M., Piccenna

22  L., McNeil JJ. *Vitamin E supplementation and mortality in healthy people: A meta-analysis of*

23  *randomized controlled trials*. Cardiovasc Drugs Ther 2014; 28:563-73

24      **ANSWER:    The studies cited in Paragraph 63 speak for themselves and**

25  **Defendants deny the allegations of Paragraph 63 to the extent that they are incomplete or**

26  **inconsistent with the terms of the studies. Defendants specifically deny that the cited**

27  **studies concluded that Vitamin E supplements increase mortality.**

28      64.    Furthermore, in analyzing the endpoint "all-cause mortality," which is what the

1  above-referenced meta-analyses did, they were evaluating whether Vitamin E supplementation

2  provided any overall health benefits, including immune health. Even if one were to ignore or

3  contest the findings regarding whether Vitamin E supplementation above 15 mg increases all-

4  cause mortality, the Bjelakovic 2013 study, the most all-inclusive study of Vitamin E

5  supplementation to date, concludes that any further studies attempting to show that Vitamin E

6  supplementation might provide any general health benefits such that it might decrease all-cause

7  mortality would, because of the already large sample size, be statistically futile.

8  **ANSWER:    The studies cited in Paragraph 64 speak for themselves and**

9  **Defendants deny the allegations of Paragraph 64 to the extent that they are incomplete or**

10  **inconsistent with the terms of the studies. Defendants specifically deny that the cited**

11  **studies considered or reached any conclusions about general health benefits of Vitamin E**

12  **supplements, whereas those studies in fact focused specifically on the impact of**

13  **supplementation on disease endpoints or death.**

14  65.    Thus, Vitamin E supplementation has been definitively proven to provide no

15  overall general health benefits (e.g., such as the hypothesis that since Vitamin E the nutrient is

16  an antioxidant, Vitamin E supplements might provide some generalized health benefits) and

17  has been proven to pose a risk of harm.

18  **ANSWER:    Defendants deny the allegations of Paragraph 65.**

19  66.    Since the last of the large scale long term studies showed that Vitamin E

20  supplementation caused a statistically significant increase (17%) in the incidence of prostate

21  cancer in men over 50 (the "Select" study), there have been no other large scale long term

22  RCTs conducted regarding whether Vitamin E supplements like those sold by Defendants may

23  provide any health benefits. In short, the book is closed on the question of Vitamin E

24  supplementation. The scientific evidence and the overwhelming consensus in the scientific

25  community is that Americans should not and do not need to take Vitamin E supplements – that,

26  at best, are superfluous and, at worst, are harmful.

27  **ANSWER:    The specific study cited in Paragraph 66 is not identified and so**

28  **Defendants lack sufficient information to admit or deny its characterization and therefore**

1  **denies it. Defendants otherwise deny the allegations of Paragraph 66.**

2      67.     In light of this consensus, well-regarded science organizations have uniformly

3  stated that Vitamin E supplementation does not provide any cardiovascular or heart health

4  benefits. The American Heart Association has released science advisories, including one in

5  2004, concluding that "scientific data do not justify the use of antioxidant vitamin supplements

6  for CVD [cardiovascular disease] risk reduction."[8]

7      **ANSWER:     The American Heart Association advisory cited in Paragraph 67**

8  **speaks for itself and Defendants deny the allegations of Paragraph 67 to the extent that**

9  **they are incomplete or inconsistent with the terms of the advisory. Defendants otherwise**

10  **deny the allegations of Paragraph 67.**

11      68.     Mayo Clinic researchers reached the same conclusion upon evaluating the

12  history of studies of Vitamin E supplements: "The bottom line is that even though initial

13  laboratory studies, animal studies and population research into the health benefits of Vitamin E

14  looked promising, the clinical trial findings which provide the best form of evidence didn't bear

15  that out. Instead, they uncovered health risks that make it unwise to take separate Vitamin E

16  supplements."[9]

17      **ANSWER:     The Mayo Clinic document cited in Paragraph 68 speaks for itself**

18  **and Defendants deny the allegations of Paragraph 68 to the extent that they are**

19  **incomplete or inconsistent with the terms of the advisory. Defendants otherwise deny the**

20  **allegations of Paragraph 68.**

21      69.     Despite the overwhelming evidence that the Products do not promote the

22  represented health benefits, each and every one of Defendants' Product packages and labels

23

24  [8] In reaching its conclusion based upon review of the RCTs, the Heart Association also
25  recognized that the "positive findings from observational studies with regard to vitamin E
supplementation and lower rates of CVD may be a reflection of the generally healthy lifestyles
and dietary intakes of supplement users" rather than any true causal effect. American Heart
26  Association Science Advisory on Antioxidant Vitamin Supplements and Cardiovascular
Disease available at http://circ.ahajournals.org/content/110/5/637.full.

27  [9] Mayo Clinic Medical Edge Newspaper Column, *Possible Risks Associated with Taking
Vitamin E Supplements,* March 18, 2011 available at http://www.mayoclinic.org/medical–
28  edge–newspaper–2011/mar–18a.html.

1 repeatedly emphasizes that the Products "Promote[] Immune Health, Heart Health [and]

2 Circulatory Health[10]." Each and every consumer who purchases these Products is exposed to

3 these false and deceptive health benefit representations, which appear prominently and

4 conspicuously on the front and back of each bottle as follows:

5          [Unable to duplicate label from complaint]

6          **ANSWER:     The cited and copied labels speak for themselves and Defendants**

7 **deny the allegations of Paragraph 69 to the extent that they are incomplete or inconsistent**

8 **with the labels. Defendants deny the remaining allegations of Paragraph 69. Defendants**

9 **specifically deny that the labels make any statements about the supplement products**

10 **health benefits, whereas the labels specifically state that the supplement product is not**

11 **intended to diagnose, treat, cure or prevent any disease.**

12 ***The Impact of Defendants' Wrongful Conduct***

13          70.     Despite the scientific evidence that Vitamin E supplementation does not

14 "promote" the represented health benefits, Defendants continue to unequivocally convey

15 through their advertising and labeling the uniform message: their Vitamin E products

16 "promote[].immune health.heart health [and].circulatory health."

17          **ANSWER:     The scientific evidence cited in Paragraph 70 is not identified and so**

18 **Defendants lack sufficient information to admit or deny it characterization and therefore**

19 **denies it. Defendants otherwise deny the allegations of Paragraph 70.**

20 Plaintiff and Class members have been and will continue to be deceived or misled by

21 Defendants' deceptive health benefit representations. Plaintiff purchased the Vitamin E

22 Products during the Class period and in doing so, read and considered the Products' labels and

23 based his decision to buy the Products on all the health benefit representations made by

24 Defendants. Defendants' health benefit representations were a material factor in influencing

25 Plaintiff's decision to purchase and consume the Products. Plaintiff would not have purchased

26

27 ───────────────

28 [10] This purported health benefit is related to heart health and its falsity is subsumed in the results from the various heart health RCTs.

1    the Products had he known that Defendants' health benefit representations were false and

2    misleading and that competent and reliable scientific evidence demonstrates that Vitamin E

3    does not promote heart health or provide any other health benefit and may actually pose a risk

4    of harm.

5          **ANSWER:**   **Defendants are without knowledge or information sufficient to form**

6    **a belief as to the truth of the allegations regarding Plaintiff in Paragraph 71 and therefore**

7    **denies them. Defendants deny the remaining allegations of Paragraph 71 and specifically**

8    **deny that they have deceived or misled Plaintiff or any other consumers.**

9         71.    As a result, Plaintiff and the Class members have been injured in their purchases

10    of these Products and have been deceived into purchasing Products that they believed, based on

11    Defendants' representations, promote one or more the represented health benefits, when, in

12    fact, they do not.

13          **ANSWER:**   **Defendants deny the allegations of Paragraph 72.**

14         72.    Defendants, by contrast, reaped enormous profits from their false marketing and

15    sale of these Products.

16          **ANSWER:**   **Defendants deny the allegations of Paragraph 73.**

17                   **CLASS DEFINITION AND ALLEGATIONS**

18         73.    Plaintiff Dachauer brings this action on behalf of himself and all other similarly

19    situated Class members pursuant to Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil

20    Procedure and seeks certification of the following Class against Defendants:

21             **<u>Multi-State Class Action</u>**

22             All consumers who, within the applicable statutes of limitations,
                purchased Defendants' Vitamin E Products in California and
23             states with similar laws.[11]

24             Excluded from the Class are Defendants and their officers,

25    [11] While discovery may alter the following, Plaintiff preliminarily avers that Defendants
    violated the laws prohibiting unfair and deceptive trade practices of the states and territories
26    wherein Class members reside, including: Cal. Bus. & Prof. Code §17200 et seq.; California
    Civil Code §1750 et seq.; Fla. Stat. §501.201 et seq.; Fla. Stat. §§817.06; 815 Ill. Comp. Stat.
27    502/1, et seq.; Mass. Gen. Laws ch.93A et seq.; Mich. Stat. §445.901 et seq.; Minn. Stat. §8.31
    et seq.; Missouri Stat. §407.010 et seq.; N.J. Rev. Stat. §56:8-1 et seq.; N.Y. Gen. Bus. Law
28    §349 et seq.; and Wash. Rev. Code. §19.86.010 et seq.

                                       **DEFENDANTS' ANSWER AND AFFIRMATIVE**
                                    **DEFENSES TO THE CORRECTED FIRST AMENDED**
                                      **CLASS ACTION COMPLAINT**

directors and employees and those who purchased Nature's
Bounty Vitamin E dietary supplements for the purpose of resale.

**ANSWER:     Defendants admit this action is brought as a putative class action and Plaintiff has proposed class definitions. Defendants deny any class could or should be certified in this case, utilizing this definition or otherwise.**

74.     In the alternative, Plaintiff Dachauer brings this action on behalf of himself and all other similarly situated consumers pursuant to Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure and seeks certification of the following Class against Defendants for violations of California consumer protection laws:

> **California-Only Class Action**
> All consumers who, within the applicable statute of limitations period, purchased Defendants' Vitamin E products in California.
>
> Excluded from this Class are Defendants and their officers, directors and employees and those who purchased Nature's
> Bounty Vitamin E dietary supplements for the purpose of resale.

**ANSWER:     Defendants admit this action is brought as a putative class action and Plaintiff has proposed class definitions. Defendants deny any class could or should be certified in this case, utilizing this definition or otherwise.**

75.     **Numerosity**. The members of the Class are so numerous that joinder of all members of the Class is impracticable. Plaintiff is informed and believes that the proposed Class(es) contain thousands of purchasers of the Vitamin E Products who have been injured by Defendants' conduct as alleged herein. The precise number of Class members is unknown to Plaintiff, but ascertainable.

**ANSWER:     Defendants deny the allegations of Paragraph 76.**

76.     **Existence and Predominance of Common Questions of Law and Fact**. This action involves common questions of law and fact, which predominate over any questions affecting individual Class members. These common legal and factual questions include, but are not limited to, the following:

- whether Defendants' representations are false, misleading, or likely to deceive;

- whether Defendants engaged in false or misleading advertising;

1
2
- • whether Plaintiff and Class members have sustained monetary loss and the proper measure of that loss;

3
4
- • whether Plaintiff and Class members are entitled to other appropriate remedies, including corrective advertising and injunctive relief;

5
- • whether Defendants' alleged conduct violates public policy; and

6
- • whether the alleged conduct constitutes violations of the laws asserted.

7
**ANSWER:    Defendants deny the allegations of Paragraph 77.**

8    77.    **Typicality**. Plaintiff's claims are typical of the claims of the members of the
9  Class because, inter alia, all Class members were injured through the uniform misconduct
10 described above and were subject to Defendants' deceptive health benefit representations that
11 accompanied each and every bottle of Vitamin E. Plaintiff is also advancing the same claims
12 and legal theories on behalf of himself and all members of the Class and the evidence he will
13 use to prove his claims will be the same as the evidence that would prove the claims of all class
14 members.

15
**ANSWER:    Defendants deny the allegations of Paragraph 78.**

16    78.    **Adequacy of Representation**. Plaintiff will fairly and adequately protect the
17 interests of the members of the Class. Plaintiff has retained counsel experienced in complex
18 consumer class action litigation, and Plaintiff intends to prosecute this action vigorously.
19 Plaintiff has no adverse or antagonistic interests to those of the Class.

20
**ANSWER:    Defendants are without knowledge or information sufficient to form
21 a belief as to the truth of the allegations regarding Plaintiff in Paragraph 79 and therefore
22 deny them.**

23    79.    **Superiority**. A class action is superior to all other available means for the fair
24 and efficient adjudication of this controversy. The financial injury suffered by individual Class
25 members is relatively small compared to the burden and expense that would be entailed by
26 individual litigation of their claims against Defendants. It would thus be virtually impossible
27 for members of the Class, on an individual basis, to obtain effective redress for the wrongs
28 done to them. Furthermore, even if Class members could afford such individualized litigation,

28

the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here.

**ANSWER:**   **Defendants deny the allegations of Paragraph 80.**

80.    Plaintiff seeks preliminary and permanent injunctive and equitable relief on behalf of the entire Class, on grounds generally applicable to the entire Class, to enjoin and prevent Defendants from engaging in the acts described, and requiring Defendants to provide full restitution to Plaintiff and Class members.

**ANSWER:**    **No answer is required to Paragraph 81 because, in the Court's Order of June 3, 2016, the Court dismissed Plaintiff's claim for injunctive relief based on lack of standing. Notwithstanding that this issue has been removed from the case, Defendants admit that Plaintiff had sought the relief alleged in Paragraph 81, but deny that Plaintiff ever was entitled to such relief.**

81.    Unless a Class is certified, Defendants will retain monies received as a result of their conduct that were taken from Plaintiff and Class members. Unless a Class-wide injunction is issued, Defendants will continue to commit the violations alleged, and the members of the Class and the general public will continue to be deceived.

**ANSWER:**    **Defendants deny the allegations of Paragraph 82. Defendants further note that in the Court's Order of June 3, 2016, the Court dismissed Plaintiff's claim for injunctive relief based on lack of standing.**

82.    Defendants have acted and refused to act on grounds generally applicable to the Class, making appropriate final injunctive relief with respect to the Class as a whole.

**ANSWER:**    **No answer is required of Paragraph 83 because, in the Court's Order of June 3, 2016, the Court dismissed Plaintiff's claim for injunctive relief based on lack of standing. Notwithstanding that this issue has been removed from the case,**

**DEFENDANTS' ANSWER AND AFFIRMATIVE
DEFENSES TO THE CORRECTED FIRST AMENDED
CLASS ACTION COMPLAINT**

1   **Defendants otherwise deny the allegations of Paragraph 83.**

2                                **COUNT I**
                    **Violation of Business & Professions Code §17200, _et seq_.**
3   **(Applicable to the Multi-State Class, or Alternatively, to the California-Only Class)**

4          83.    Plaintiff and Class members re-allege and incorporate by reference each

5   allegation set forth above and further allege as follows.

6          **ANSWER:    Defendants incorporate their answers to each allegation set forth**

7   **above as their answer to Paragraph 84.**

8          84.    Plaintiff brings this claim on behalf of himself and on behalf of the California-

9   only Class and on behalf of the Multi-State Class.

10          **ANSWER:    Defendants admit that Plaintiff purports to bring this claim on**

11  **behalf of himself and on behalf of the California-only Class and on behalf of the Multi-**

12  **State Class. Defendants deny that any class could or should be certified in this case.**

13          85.    As alleged herein, Plaintiff has suffered injury in fact and lost money or property

14  as a result of Defendants' conduct because he purchased the Product in reliance on Defendants'

15  health benefit representations, but did not receive a Product that promotes these health benefits.

16  The Unfair Competition Law, Business & Professions Code §17200, _et seq._ ("UCL"), prohibits

17  any "unlawful," "fraudulent" or "unfair" business act or practice and any false or misleading

18  advertising. In the course of conducting business, Defendants committed unlawful business

19  practices by, _inter alia_, making the representations (which also constitutes advertising within

20  the meaning of §17200) and omissions of material facts, as set forth more fully herein, and

21  violating Civil Code §§1572, 1573, 1709, 1711, 1770 and Business & Professions Code

22  §§17200, et seq., 17500, _et seq_.

23          **ANSWER:    Defendants deny the allegations of Paragraph 86.**

24          86.    Plaintiff and the Class reserve the right to allege other violations of law, which

25  constitute other unlawful business acts or practices. Such conduct is ongoing and continues to

26  this date.

27          **ANSWER:    To the extent Paragraph 87 does not contain factual assertions, no**

28  **answer is required. Defendants otherwise deny the allegations of Paragraph 87.**

1    87.    Defendants' actions also constitute "unfair" business acts or practices because,

2   as alleged above, inter alia, Defendants engaged in false advertising, misrepresented and

3   omitted material facts regarding their Vitamin E Products, and thereby offended an established

4   public policy, and engaged in immoral, unethical, oppressive, and unscrupulous activities that

5   are substantially injurious to consumers.

6          **ANSWER:    Defendants deny the allegations of Paragraph 88.**

7          88.    As stated in this Complaint, Plaintiff alleges violations of consumer protection,

8   unfair competition and truth in advertising laws, resulting in harm to consumers. Defendants'

9   acts and omissions also violate and offend the public policy against engaging in false and

10   misleading advertising, unfair competition and deceptive conduct towards consumers. This

11   conduct constitutes violations of the unfair prong of Business & Professions Code §17200, *et*

12   *seq*.

13         **ANSWER:    Defendants admit that Plaintiff has purported to allege violations of**

14   **state consumer protection, unfair competition and truth in advertising laws. Defendants**

15   **otherwise deny the allegations of Paragraph 89.**

16         89.    There were reasonably available alternatives to further Defendants' legitimate

17   business interests, other than the conduct described herein.

18         **ANSWER:    Defendants deny the allegations of Paragraph 90.**

19         90.    Business & Professions Code §17200, *et seq*., also prohibits any "fraudulent

20   business act or practice."

21         **ANSWER:    The Business & Professions Code §17200, et seq., speaks for itself**

22   **and Defendants deny the allegations of Paragraph 91 to the extent that they are**

23   **incomplete or inconsistent with the terms of the advisory.**

24         91.    Defendants' actions, claims, nondisclosures and misleading statements, as more

25   fully set forth above, were also false, misleading and/or likely to deceive the consuming public

26   within the meaning of Business & Professions Code §17200, *et seq*.

27         **ANSWER:    Defendants deny the allegations of Paragraph 92.**

28         92.    Plaintiff and the other Class members have suffered injury in fact and lost

**DEFENDANTS' ANSWER AND AFFIRMATIVE**
**DEFENSES TO THE CORRECTED FIRST AMENDED**
**CLASS ACTION COMPLAINT**

1   money as a result of these unlawful, unfair, and fraudulent practices.

2   **ANSWER:   Defendants deny the allegations of Paragraph 93.**

3   93.   As a result of their deception, Defendants have been able to reap unjust revenue

4   and profit.

5   **ANSWER:   Defendants deny the allegations of Paragraph 94.**

6   94.   Unless restrained and enjoined, Defendants will continue to engage in the

7   above-described conduct. Accordingly, injunctive relief is appropriate.

8   **ANSWER:   No answer is required of Paragraph 95 because, in the Court's**

9   **Order of June 3, 2016, the Court dismissed Plaintiff's claim for injunctive relief based on**

10  **lack of standing. Notwithstanding that this issue has been removed from the case,**

11  **Defendants otherwise deny the allegations of Paragraph 95.**

12  95.   Plaintiff, on behalf of himself, all others similarly situated, and the general

13  public, seeks restitution of all money obtained from Plaintiff and the members of the Class as a

14  result of unfair competition, an injunction prohibiting Defendants from continuing such

15  practices, corrective advertising and all other relief this Court deems appropriate, consistent

16  with Business & Professions Code §17203.

17  **ANSWER:   Defendants admit that Plaintiff seeks the relief alleged in Paragraph**

18  **96, but deny that Plaintiff is entitled to such relief. Defendants further answer that, in the**

19  **Court's Order of June 3, 2016, the Court dismissed Plaintiff's claim for injunctive relief**

20  **based on lack of standing, removing that issue from the case.**

21
22

**COUNT II**
**Violations of the Consumers Legal Remedies Act –Civil Code §1750 *et seq*.**
**(Applicable to the California-Only Class)**

23  96.   Plaintiff repeats and re-alleges the allegations contained in the paragraphs

24  above, as if fully set forth herein.

25  **ANSWER:   Defendants incorporate their answers to each allegation set forth**

26  **above as their answer to Paragraph 97.**

27  97.   Plaintiff Dachauer brings this claim individually and on behalf of the California-

28  only Class.

32

1    **ANSWER:    Defendants admit that Plaintiff purports to bring this claim**

2    **individually and on behalf of the California-only class. Defendants deny that any class**

3    **could or should be certified in this case.**

4    98.    This cause of action is brought pursuant to the Consumers Legal Remedies Act,

5    California Civil Code §1750, *et seq*. (the "Act"). Plaintiff is a "consumer" as defined by

6    California Civil Code §1761(d). Defendants' Vitamin E Products are "goods" within the

7    meaning of the Act.

8    **ANSWER:    Defendants admit that Plaintiff has brought a claim pursuant to the**

9    **Consumers Legal Remedies Act, California Civil Code §1750**, *et seq*.  **The remainder of**

10   **Paragraph 99 contains legal conclusions rather than factual assertions and so no answer**

11   **is required. The terms of that Act speak for themselves and Defendants further deny the**

12   **allegations of Paragraph 99 to the extent they are inconsistent with those terms.**

13   99.    Defendants violated and continues to violate the Act by engaging in the

14   following practices proscribed by California Civil Code §1770(a) in transactions with Plaintiff

15   and the Class which were intended to result in, and did result in, the sale of the Vitamin E

16   Products:

17   (5)    Representing that [the Vitamin E Products have] . . . approval, characteristics, . .

18   . uses [and] benefits . . . which [they do] not have . . . .

19   *        *        *

20   (7)    Representing that [the Vitamin E Products are] of a particular standard, quality

21   or grade . . . if [they are] of another.

22   *        *        *

23   (9)    Advertising goods . . . with intent not to sell them as advertised.

24   *        *        *

25   (16)   Representing that [the Vitamin E Products have] been supplied in accordance

26   with a previous representation when [they have] not.

27   **ANSWER:    Defendants deny the allegations of Paragraph 100.**

28   100.   Defendants violated the Act by representing and failing to disclose material facts

1  on the Products' labels and associated advertising, as described above, when they knew, or
2  should have known, that the representations were false and misleading and that the omissions
3  were of material facts they were obligated to disclose.

4      **ANSWER:    Defendants deny the allegations of Paragraph 101.**

5      101.    Pursuant to California Civil Code §1782(d), Plaintiff and the Class seek a Court
6  order enjoining the above-described wrongful acts and practices of Defendants and for
7  restitution and disgorgement.

8      **ANSWER:    No answer is required of Paragraph 102 because, in the Court's
9  Order of June 3, 2016, the Court dismissed Plaintiff's claim for injunctive relief based on
10 lack of standing. Notwithstanding that this issue has been removed from the case,
11 Defendants further deny the allegations of Paragraph 102.**

12     102.    Pursuant to §1782 of the Act, by letter dated January 13, 2016, Plaintiff notified
13 Defendants in writing by certified mail of the particular violations of §1770 of the Act and
14 demanded that Defendants rectify the problems associated with the actions detailed above and
15 give notice to all affected consumers of Defendants' intent to so act.

16     **ANSWER:    Defendants admit that Plaintiff sent them the letter referenced in
17 Paragraph 103, but deny the substance of the allegations made in that letter.**

18     103.    Defendants failed to rectify or agree to rectify the problems associated with the
19 actions detailed above and give notice to all affected consumers within 30 days of the date of
20 written notice pursuant to §1782 of the Act. Therefore, Plaintiff further seeks claims for actual,
21 punitive and statutory damages as appropriate.

22     **ANSWER:    Defendants admit that Plaintiff seeks the relief alleged in Paragraph
23 104, but deny that Plaintiff is entitled to such relief. Defendants deny the remaining
24 allegations of Paragraph 104.**

25     104.    Defendants' conduct is fraudulent, wanton and malicious.

26     **ANSWER:    Defendants deny the allegations of Paragraph 105.**

27

28

DEFENDANTS' ANSWER AND AFFIRMATIVE
DEFENSES TO THE CORRECTED FIRST AMENDED
CLASS ACTION COMPLAINT

**Affirmative Defenses**

NBTY, Inc. and Nature's Bounty, Inc. (collectively, "NBTY") hereby state the following affirmative defenses to Plaintiff's allegations in this case.

**Preemption**

1.   Plaintiff's state-law claims are expressly preempted by the federal Nutrition Labeling and Education Act of 1990 (the "NLEA"), 21 U.S.C. § 343, which prohibits state-law based requirements for supplement labels like those at issue in this case that are not identical to federal requirements. 21 U.S.C. § 343-1(a)(5).

2.   The NBTY Vitamin E labels at issue in this case satisfy the federal requirements for such labels, as specifically described at 21 U.S.C. § 343(r)(6) and in related regulations.

3.   As specifically alleged in Paragraph 18 of the Corrected First Amended Complaint, Plaintiff's case is based on structure/function claims contained on the Vitamin E labels at issue in the case. Structure/function claims, as defined in federal regulations, pertain to the underlying nutrient's structure and function in the body, in this case Vitamin E. *See e.g.* 21 CFR § 101.93(f) ("[p]ermitted structure/function statements" include "statements that describe the role of a nutrient or dietary ingredient intended to affect the structure or function in humans or that characterize the documented mechanism by which a nutrient or dietary ingredient acts to maintain such structure or function, provided that such statements are not disease claims under paragraph (g) of this section").

4.   The structure/function claims on the NBTY Vitamin E labels at issue in this case are substantiated, true and not misleading.

5.   The NBTY Vitamin E labels at issue in this case include the statement that the structure/function claims on the label have not been evaluated by the Food and Drug Administration and, further, that the supplement product "is not intended to diagnose, treat, cure, or prevent any disease."

6.      The federal rules for supplement labels foresee a combination of structure/function claims and a clarifying statement that the supplement product itself "is not intended to diagnose, treat, cure or prevent any disease"; whereas, the premise of Plaintiff's case is that this combination could confuse a reasonable consumer to believe that the supplement product would in fact treat, cure or prevent disease or death.

7.      Plaintiff's case thus relies on state-law rules to suggest requirements for NBTY's supplement labels that are not identical to the federal rule. Plaintiff's claims are, accordingly, preempted by the NLEA.

**Statute of Limitations**

Plaintiff's claims are time-barred to the extent he seeks relief for transactions that occurred outside the limitations period set by the various state laws on which he purports to sue, whether individually or on behalf of the putative classes he defines in the complaint.

**Equitable Defenses**

1.      Plaintiff's claims are barred by the doctrines of laches, estoppel, waiver, unclean hands and/or other equitable defenses.

2.      The Vitamin E products at issue in this case have been on the market for decades.

3.      The studies upon which Plaintiff relies for his claim that the labels are false and misleading, and also the supposed consensus that Plaintiff claims exists regarding Vitamin E products, have also been known for at least a decade.

4.      Notwithstanding the availability of this information, Plaintiff allegedly made his purchase in 2015 and did not file his claim until 2016.

5.      Accordingly, Plaintiff's claims are barred by the doctrines of laches, estoppel, waiver, unclean hands and/or other equitable defenses.

DEFENDANTS' ANSWER AND AFFIRMATIVE
DEFENSES TO THE CORRECTED FIRST AMENDED
CLASS ACTION COMPLAINT

**<u>Voluntary Payment Doctrine</u>**

Plaintiff's claims are barred by the voluntary payment doctrine because Plaintiff voluntarily paid for Defendants' product about which he now complains with full knowledge of the facts and circumstances pursuant to which such amounts were paid.

**<u>Mitigation of Damages</u>**

The claims of Plaintiff and other members of the proposed class fail in whole or in part because Plaintiff and other members of the proposed class failed to take reasonable steps to mitigate their alleged damages, if any, and their recovery must be barred or diminished accordingly.

**<u>Additional Defenses</u>**

Defendants have not completed their investigation and discovery regarding the facts and claims asserted by Plaintiff. Accordingly, without admitting any obligation to do so, Defendants reserve the right to assert such additional affirmative defenses as necessary based on such ongoing investigation and discovery.

Respectfully submitted,

Dated:  June 17, 2016                    A&G LAW LLC

By:   */s/ Robert M. Andalman*
      Robert M. Andalman
      Attorneys for Defendants
      NBTY, INC. and NATURE'S BOUNTY, INC.

**DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES TO THE CORRECTED FIRST AMENDED CLASS ACTION COMPLAINT**

1

## CERTIFICATE OF SERVICE

2

I hereby certify that on June 17, 2016 I electronically filed the foregoing with the Clerk

3

of the Court using the CM/ECF system which will send notification of such filing to the

4

Electronic Service List for this Case.

5

6

*/s/ Robert M. Andalman*
Robert M. Andalman

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DEFENDANTS' ANSWER AND AFFIRMATIVE
DEFENSES TO THE CORRECTED FIRST AMENDED
CLASS ACTION COMPLAINT**