UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAUL DACHAUER,<br><br>               Plaintiff,<br><br>        v.<br><br>NBTY, INC, et al.,<br><br>               Defendants. | Case No.  16-cv-00216-VC<br><br>**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 63, 68, 69 |

The labels on the defendants' vitamin E supplements claim that the product "promotes" or "supports" heart, circulatory, and immune health.  Dachauer contends these labels are false or misleading within the meaning of the Nutrition Labeling and Education Act, and therefore within the meaning of California's Unfair Competition Law and Consumer Legal Remedies Act.  He may be right, but as explained below, the Court must grant summary judgment to the defendants nonetheless.

**I**

Common sense suggests that the claims on the vitamin E labels – claims that refer not just to heart, circulatory, and immune function, but to heart, circulatory, and immune *health* – imply a connection to disease.  *See Kaufman v. CVS Caremark Corp.*, 836 F.3d 88, 96 (1st Cir. 2016); *see also* 21 C.F.R. § 101.93(g)(2)(x).  The notion that ordinary consumers buy supplements promoting "heart health" or "immune health" with no attendant expectation about disease is dubious on its face.  The defendants' own claim language suggests as much.  *See* Merriam-Webster's Collegiate Dictionary 574 (11th ed. 2003).  Their own 30(b)(6) witness suggests as much.  *See* Mitmesser Dep. (Dkt. No. 64-1) at 89-95; *id.* (Dkt. No. 67-5) at 153-55.

Even their own expert suggests as much. *See* Bruno Report (Dkt. No. 74-1) at ¶¶ 12-15. Of course, in other contexts, a claim about the "health" of something might not carry any inherent disease-related implications – the defendants' claim about "skin health," for example. *See* Regulations on Statements Made for Dietary Supplements Concerning the Effect of the Product on the Structure or Function of the Body ("Structure/Function Regulations"), 65 Fed. Reg. 1000-01, 1020 (Jan. 6, 2000). It may also be possible for product labels to distinguish between a structure/function medical endpoint and a disease-related medical endpoint even when the former is commonly understood as contributing to the latter. Claims about anti-inflammatory or antioxidant functions might fit into this category. But as the defendants' own evidence suggests, this seems to be one case where it's difficult for the defendants to make a specific "health" claim without, in the same breath, implying a specific disease outcome.

Had Dachauer built a case around this theory, things might have gotten interesting. A claim that implies disease outcomes is a disease claim, subject to attack by disease-related scientific evidence. *See* 21 C.F.R. § 101.93(g)(2). Here, if the defendants' claims are in fact disease claims, the scientific consensus would seem to be against them, such that a UCL or CLRA action could perhaps proceed to trial. But Dachauer isn't suing on the theory that the defendants' labels are false or misleading based on their representations about disease. *See* FAC (Dkt. No. 25) at ¶¶ 17-20. Indeed, in his deposition he disclaimed the idea that he bought vitamin E supplements to ward off disease. *See* Dachauer Dep. (Dkt. No. 64-1) at 72-74. Instead, Dachauer is suing on the theory that the defendants' labels are false or misleading based on their representations about structure or function. *See* MSJ Hr'g Tr. (Dkt. No. 84) at 9-10; Dachauer Dep. (Dkt. No. 64-1) at 73. This makes for a more difficult burden, as it breaks the direct link between the defendants' claims and the disease-related science that might otherwise disprove them. In light of the evidence the parties have submitted, this is a burden Dachauer can't meet.

## II

### A. Whether the So-Called Structure/Function Claims Are False

To show that a structure/function claim is false, a plaintiff must come forward with

affirmative evidence of falsity, and cannot rely merely on a lack of substantiation.  *See* Cal. Bus. & Prof. Code § 17508(b); *Nat'l Council Against Health Fraud, Inc. v. King Bio Pharm., Inc.*, 107 Cal. App. 4th 1336, 1345-46 (2003).  As an initial matter, it bears noting that the defendants take this principle too far, appearing at times to argue that they are entitled to summary judgment if there is any genuine dispute of fact on whether a label's claims about structure or function are false.  *See* MSJ (Dkt. No. 63) at 7.  This is an end-run around the trier of fact that neither the statute nor the case law supports.  *See, e.g.*, *Mullins v. Premier Nutrition Corp.*, 178 F. Supp. 3d 867, 876 (N.D. Cal. 2016).  Of course, a plaintiff who comes forward only with evidence that the science is debatable has failed to meet his burden.  *See In re GNC Corp.*, 789 F.3d 505, 515 (4th Cir. 2015).  But the same can't be said of a plaintiff who comes forward with debatable evidence demonstrating that the scientific consensus is on his side.  *See id.*  If a reasonable jury could conclude that the science affirmatively demonstrates the falsity of the defendants' claims, the existence of plausible disagreement doesn't support summary judgment for the defendant.

However, even under the proper understanding of his burden, Dachauer has not put forward evidence sufficient to create a genuine dispute of fact as to the falsity of the so-called structure/function claims on the labels.  He has instead put forward evidence of the falsity of disease claims he concedes he isn't suing on.  Dachauer's expert, Dr. Miller, justifies this approach by asserting that the morbidity and mortality studies he cites are capable of confirming or disproving the defendants' structure/function claims.  Miller Report (Dkt. No. 67-6) at ¶¶ 7-12, 25-26, 29.  In theory, this might work.  It's at least conceivable that a structure/function claim could be disproven by disease-related studies alone.  But this scenario presumes that the defendants' structure/function claims will necessarily be borne out in disease outcomes – a presumption for which Dachauer hasn't offered evidence, and for which Dr. Miller is particularly ill-prepared to argue given his admitted lack of familiarity with the concept of structure/function claims.  Miller Dep. (Dkt. No. 64-1) at 57:10-17, 99-104; Miller Report (Dkt. No. 67-6) at ¶ 4.  Contrast this with the evidence the defendants have put forward, which includes studies targeting non-disease endpoints and confirming the benefits of vitamin E supplementation on lipid

oxidation and inflammatory response.  Bruno Decl. (Dkt. No. 65) at ¶¶ 6, 8; Bruno Report (Dkt. No. 74-1) ¶¶ 11, 13-14; *see also* Miller Report (Dkt. No. 67-6) at ¶ 5.  Dr. Miller calls these outcomes biomarkers of disease risk and points out that vitamin E's supposed benefit on these biomarkers isn't reflected in the epidemiological evidence.  *See, e.g.*, Miller Dep. (Dkt. No. 64-1) at 99-104.  But Dr. Miller's studies don't demonstrate that the "health" benefits the defendants have identified are untrue; they demonstrate that the "health" benefits the defendants have identified carry no measurable impact on disease.  *See, e.g.*, Miller Report (Dkt. No. 67-6) ("[V]itamin E supplementation does not reduce risk for cardiovascular disease, stroke, or mortality.  In other words, it does not 'help maintain a healthy heart.'"); *cf. Gallagher v. Bayer AG*, No. 14-CV-04601-WHO, 2015 WL 1056480, at *9 (N.D. Cal. Mar. 10, 2015).[1]

B. Whether the So-Called Structure/Function Claims Are Misleading

Dachauer's evidence is no more successful under the "misleading" prong.  To the extent his theory is that the defendants' claims assert a level of scientific certainty that the evidence belies, Dachauer is again foiled by his disease-based studies.  *See Mullins*, 178 F. Supp. 3d at

---

[1] The baroque reasoning required to evaluate Dachauer's theory of liability reflects the difficulty he has created in taking the position that the labels' reference to heart, circulatory, and immune "health" isn't enough to imply a disease outcome for regulatory purposes, yet necessarily implies a disease outcome for evidentiary purposes.  At the summary judgment hearing, Dachauer's counsel suggested he felt boxed in by an FDA "guidance" that foreclosed the argument that the claims in the labels carried disease-related implications.  *See* MSJ Hr'g Tr. (Dkt. No. 84) at 25; *see also* Structure/Function Regulations, 65 Fed. Reg. at 1018, 1028-29; *Gallagher*, 2015 WL 1056480, at *7.  But it's not clear that plaintiffs should feel so constrained.  In an effort to enforce the boundaries between the "disease" and "structure/function" categories, the FDA's rulemaking document concluded that a phrase such as "supports the immune system" would be indicative of a structure/function claim.  65 Fed. Reg. at 1028-29.  But so long as a claim's meaning is judged from the consumer's perspective and not on the basis of abstract criteria or the defendant's intentions, nothing would seem to prevent an argument that the FDA's guidance is inapplicable or invalid as applied to specific labels.  *See* 21 C.F.R. § 101.93(g)(2) ("A statement claims to diagnose, mitigate, treat, cure, or prevent disease if it claims, explicitly or implicitly, that the product . . . (viii) Has a role in the body's response to a disease or to a vector of disease . . . ; or (x) Otherwise suggests an effect on a disease or diseases."); 21 U.S.C. § 343(r)(6) ("A [structure/function claim] may not claim to diagnose, mitigate, treat, cure, or prevent a specific disease or class of diseases.").

894-95.  To the extent his theory is that the defendants' claims mislead because of their disease-related implications, Dachauer is again foiled by his concession that the defendants' claims are structure/function.  A structure/function claim, by definition, carries no disease-related implications.  *See* 21 C.F.R. § 101.93(f); *id.* § 101.93(g)(2) ("These criteria are not intended to classify as disease claims statements that refer to the ability of a product to maintain healthy structure or function, *unless the statement implies disease prevention or treatment*.  In determining whether a statement is a disease claim under these criteria, FDA will consider the context in which the claim is presented." (emphasis added)).

## III

Summary judgment is granted for the defendants, and the motion relating to Dr. Mitmesser is denied as moot.  As the new information disclosed in Dr. Bruno's declaration isn't the reason Dachauer's evidence is insufficient to create a dispute of fact, the motion to exclude Dr. Bruno's declaration is also denied as moot.

**IT IS SO ORDERED.**

Dated:  May 26, 2017

_____
VINCE CHHABRIA
United States District Judge